IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LYNTONIA FITCH,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CHICAGO POLICE DEPARTMENT et al.,<br><br>　　　　　Defendants. | Case No. 1:25-CV-03861<br><br>Honorable Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

　　　　When Plaintiff Lyntonia Fitch received notice of an arrest warrant for a retail theft she did not commit, she successfully moved to have it quashed within five days and had a police officer confirm she was not the perpetrator. However, for the first two days, she remained at home out of fear of being detained. Plaintiff now sues the Chicago Police Department (CPD), City of Chicago Bureau of Internal Affairs, and two police officers, Edwin Nunez and Selim Benis, for failing to verify her identity before issuing the warrant, which she claims violated her Fourth Amendment right against unreasonable seizure and Fourteenth Amendment rights to due process and equal protection. While the Court appreciates the stress that these events may have imposed upon Plaintiff, her allegations do not give rise to constitutional violations by Defendants. Therefore, as discussed below, the Defendants' motion to dismiss the Complaint [19] is granted.

Discussion

　　　　Earlier this year, Defendants sought a warrant for Plaintiff's arrest as the suspected perpetrator of a misdemeanor retail theft. [1] at 2.[1] Upon its issuance in Will County, a non-party

---

[1] For purposes of reviewing this motion to dismiss under Rule 12(b)(6), the Court accepts as true, as it must, all factual allegations in the complaint. *Heredia v. Cap. Mgmt. Servs., L.P.*, 942 F.3d 811, 814 (7th Cir.

law firm seeking to retain Plaintiff as a client sent her notice of the warrant. *Id.* at 7. Even though Plaintiff was not involved in the alleged crime, after receiving notice of the warrant, she remained at home for two days for fear of being detained. *Id.* at 2. On the third day, she brought a motion to quash the warrant in state court, which was granted on the condition that Plaintiff be fingerprinted and photographed at the Tinley Park Police Department. *Id.* at 3. There, a non-party officer confirmed that Plaintiff had not been involved in the theft through a visual comparison. *Id.* Plaintiff alleges that a police report from another district demonstrates that her name was used as an alias by someone arrested last year, so she claims this arrest warrant was a consequence of Defendants' failure to diligently investigate that person's true identity. *Id.* at 3–6; *see also* [21] at 12.

Plaintiff now sues Defendants for violating her Fourth Amendment rights through an unlawful seizure, and Fourteenth Amendment rights by negligently failing to verify that she was the perpetrator of the theft before issuing the arrest warrant. *Id.* at 4–5. She also brings a state-law claim for negligence based on the same alleged failings. *Id.* at 6. She seeks compensatory damages for emotional distress and reputational harm, punitive damages against the defendant officers, and injunctive relief to correct her police record. *Id.* Defendants have moved to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's allegations do not amount to plausible federal claims and that Defendants are immune from her state negligence claim under the Illinois Tort Immunity Act.

"A motion under Rule 12(b)(6) tests whether the complaint states a claim on which relief may be granted." *Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012). To survive a motion to

---

2019). The Court also considers the documents attached to the Complaint. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018).

dismiss, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the sufficiency of a complaint for a motion to dismiss, the Court construes it in the light most favorable to the nonmoving party, accepts well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). Review of the complaint includes review of the documents attached to the complaint. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018). A complaint filed by a *pro se* plaintiff is held to less stringent standards and liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Schillinger v. Kiley*, 954 F.3d 990, 994 (7th Cir. 2020).

First, Defendants argue that Plaintiff's Fourth Amendment claim fails because she was never seized. Plaintiff responds that the unlawful arrest warrant constructively restrained her rights in a manner that constitutes a legal seizure.

"Seizures of a person fall into one of two categories: the application of 'physical force' or 'submission to the assertion of authority.'" *United States v. Jones*, 22 F.4th 667, 673 (7th Cir. 2022) (emphasis omitted) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). A show of authority is an order to restrict a person's movement. *Hodari D.*, 499 U.S. at 628. "[A] seizure by show of authority does not occur *unless* and *until* the suspect submits." *United States v. Griffin*, 652 F.3d 793, 800–01 (7th Cir. 2011); *see, e.g.*, *United States v. Wilson*, 963 F.3d 701, 703 (7th Cir. 2020) (finding that defendant did not submit to the officers' authority when asked to stand up because "he rose to his feet, but only to sprint away"). Once the suspect submits to the asserted authority, her freedom of movement has been terminated in a way that gives rise to a seizure within the meaning of the Fourth Amendment. *Griffin*, 652 F.3d at 801.

In determining whether a show of authority has occurred that could lead to a seizure, the Supreme Court has defined the test as whether "*the officer's* words and actions" would have conveyed to a reasonable person that the person was being ordered to restrict their movement. *Hodari D.*, 499 U.S. at 628 (emphasis added). Likewise, the Seventh Circuit has instructed courts to consider circumstances relating to an *officer's* interactions with the individual, such as location, the number of officers, what the officer said and how they said it, whether the officer made any show of weapons or physical force, whether the officer suggested that the individual was suspected of a crime, and whether the officers told the individual they were free to leave. *Jones*, 22 F.4th at 673. Plainly, the focus of the analysis is on what the officers did leading to a seizure and not whether there was a warrant issued.

Plaintiff does not plead any physical force exerted upon her, so she can only claim a seizure if there was a show of authority to which she submitted. According to the Complaint and its exhibits, Plaintiff received notice of the warrant through a private legal practice that was trying to obtain her as a client, not through the police. There is no allegation that Defendants took any action before the quashing of the warrant, let alone circumstances from which the Court could conclude that an officer asserted her authority. Plaintiff's claim only survives if the warrant itself constitutes a show of authority. Her exhibits demonstrate that the warrant was issued upon complaint, which Illinois law requires to contain certain information. 725 ILCS 5/107-9(d). That includes a command that the person be arrested and brought to court or the person appear before the court at a certain time and place. 725 ILCS 5/107-9(d)(6). The Seventh Circuit has stated that the requirement to appear in court is "not a present show of authority but a future obligation to do something." *Smith v. City of Chicago*, 3 F.4th 332, 341 (7th Cir. 2021), *rev'd on other grounds*, 142 S. Ct. 1665 (2022); *see also, e.g.*, *Braun v. City of McHenry*, 2022 WL 523127, at *3 (N.D.

Ill. Feb. 22, 2022) (fear of violating a court order and being arrested lacked the immediacy of a Fourth Amendment seizure and was "at most 'a precursor to a possible seizure rather than a seizure itself'" (quoting *Smith*, 3 F.4th at 341)). Applying that logic to a warrant ordering Plaintiff's appearance in court, the issuance of the warrant was at best an obligation placed upon Plaintiff rather than a show of authority at the time it was in effect.

Even if the warrant was a show of authority, Plaintiff does not allege any action that constitutes a submission to authority. Plaintiff stayed at her home and does not allege that she either complied with any warrant instructions to report to court or encountered any officer before the warrant was quashed. Ultimately, there was no submission to trigger a seizure under the Fourth Amendment. *Griffin*, 652 F.3d at 801. The actions alleged in the Complaint and any fear Plaintiff experienced due to her learning of the warrant "lack the immediacy of a Fourth Amendment seizure" and do not support her claim. *Smith*, 3 F.4th at 341.

Turning to Plaintiff's Fourteenth Amendment due process claims, Defendants move to dismiss this claim for failure to establish a cognizable liberty or property interest. They further argue that Plaintiff's failure to respond to their arguments should result in a waiver of the claim. It is a longstanding rule in the Seventh Circuit that "a person waives an argument by failing to make it before the district court." *Lee v. Ne. Ill. Regional Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019) (citation omitted). "As a general proposition, pro se litigants are subject to the same waiver rules as litigants represented by counsel." *Douglas v. Reeves*, 964 F.3d 643, 649 (7th Cir. 2020) (citation omitted). On the other hand, "it is incumbent on [the district court] to take appropriate measures to permit the adjudication of *pro se* claims on the merits, rather than to order their dismissal on technical grounds." *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 547, 555 (7th Cir. 1996). In light of the Court's duty to ensure that a *pro se* litigant's claim is given a fair and

meaningful consideration, the Court will proceed with an analysis of Plaintiff's due process claim to explain why it must be dismissed.

"The Fourteenth Amendment prevents a state from depriving a person of 'property' or 'liberty' without due process of law." *Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 536 (7th Cir. 2023) (citing U.S. Const. amend XIV, § 1). To determine whether a state actor has violated this protection of procedural due process, the analysis proceeds in two steps: (1) identifying the protected property or liberty interest at stake; and (2) if the plaintiff was deprived of one of those interests, determining what process was due under the circumstances. *Id.* The Fourteenth Amendment also protects individuals from "the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice." *Doe v. City of Lafayette*, 377 F.3d 757, 768 (7th Cir. 2004) (quoting *Bank of Columbia v. Okely*, 17 U.S. (4 Wheat.) 235, 244 (1819)). A claim under this right to substantive due process can "address harmful, arbitrary acts by public officials," but it requires the plaintiff to meet a "high standard even when the alleged conduct was abhorrent, to avoid constitutionalizing every tort committed by a public employee." *Geinosky v. City of Chicago*, 675 F.3d 743, 750 (7th Cir. 2012). To sufficiently plead a substantive due process claim, the plaintiff must first allege "the violation of a fundamental right," and the list of fundamental rights is "a short one." *Robbin v. City of Berwyn*, 108 F.4th 586, 590 (7th Cir. 2024) (citation omitted). So, whether procedural or substantive, the first step is to identify the right or interest that has been allegedly violated.

While the Supreme Court recognized the freedom of movement in *City of Chicago v. Morales*, 527 U.S. 41, 53–54 (1999), it was part of the majority opinion that was joined by only three justices and not part of the analysis underlying the ruling. *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 757 (7th Cir. 2012); *see also Robbin*, 108 F.4th at 590 & n.2 (calling the

analysis "dicta"). Additionally, the Supreme Court has also "limited, significantly, the level of generality at which [courts] may define a right." *Doe*, 377 F.3d at 769 (citing *Washington v. Glucksberg*, 521 U.S. 702, 722 (1997)). A description of the asserted right must be one that is "specific and concrete" and "avoids sweeping abstractions and generalities." *Id*. Thus, the Seventh Circuit has not recognized "a generalized right of free movement" in the due process context and has instead narrowed the alleged liberty in each case based on the allegations or record. *Robbin v. City of Berwyn*, 108 F.4th 586, 590–91 & 590 n.2 (7th Cir. 2024). For example, in *Doe v. City of Lafayette*, the plaintiff alleged that the ban against him entering public parks violated his right to movement, which the Seventh Circuit determined was not a generalized right to movement but rather "a right to enter public parks simply to wander and loiter innocently." 377 F.3d at 772–73. Similarly, in *Hannemann v. Southern Door County School District*, the Seventh Circuit found that plaintiff's allegations about being banned from entering school grounds for various activities equated to an alleged violation of his right as a member of the public to loiter on school grounds. 673 F.3d at 756–58. And in *Robbin v. City of Berwyn*, the plaintiff alleged that the defendants violated his right "to go about his business with dignity and autonomy, to carry out his trade unmolested, to travel through public spaces, and to be free of harassment and race-based attacks," which narrowed his liberty interest to "a right to movement without harassment." 108 F.4th at 590–91. In none of these cases did the Seventh Circuit find a fundamental right or protected liberty interest that supported due process claims.

Plaintiff alleges that Defendants deprived her of her right to free movement, which was allegedly restricted because she feared arrest and did not leave her house. She alleges that after learning of the warrant, she remained at home for two days, unable to care for her child without fear of being detained. She does not allege where she intended to go, how this prevented her from

caring for her child, or what she otherwise would have done if she had not learned of the warrant. The only implication from the allegations is that she would have left her house and been free to go anywhere absent the warrant. That is a generalized right to movement that the Seventh Circuit has declined to recognize as grounds for a due process claim. *See Robbin*, 108 F.4th at 590–91; *Doe*, 377 F.3d at 771 & n.12.

Additionally, Plaintiff alleges that her reputation was injured. "It is well-settled that an individual has no cognizable liberty interest in his reputation; consequently, when a state actor makes allegations that merely damage a person's reputation, no federally protected liberty interest has been implicated." *Mann v. Vogel*, 707 F.3d 872, 878 (7th Cir. 2013) (citing *Paul v. Davis*, 424 U.S. 693, 711–12 (1976)). Nor is the potential for public stigma "cognizable as a due-process violation because reputational harm doesn't deprive a person of life, liberty, or property." *Swanigan v. City of Chicago*, 881 F.3d 577, 584 (7th Cir. 2018).

The Seventh Circuit has considered a due process claim based on an allegation of reputational harm in the context of police files. In *Swanigan*, the plaintiff was arrested under suspicion of being a serial robber. 881 F.3d at 580–81. After he was cleared of suspicion, the police entered a final notation into his case file reading "cleared—closed other exceptional." *Id.* at 581. The plaintiff contended that this label could be misinterpreted as designating him as the perpetrator who was not prosecuted. *Id.* On this basis, he brought a due process claim alleging the potential for reputational harm. *Id.* The district court and Seventh Circuit found that he failed to plead a cognizable interest for the claim. *Id.* at 584. Further, it was "entirely speculative" to suggest that this label would lead a police officer to use the case report against him and pull him over during a traffic stop. *Id.*

8

Although Plaintiff alleges that her reputation was damaged, she does not allege how the events caused damage or what the damage is. With no factual allegations about her reputation, the Complaint does not provide enough details "to present a story that holds together" and is more than conclusory. *See Catinella v. Cook County*, 881 F.3d 514, 516 (7th Cir. 2018). Even considering the potential for some sort of reputational harm, it would be just as speculative as the harm in *Swanigan*. Plaintiff was not arrested, but a warrant was issued in her name for suspicion of committing a theft. She successfully quashed the warrant, and a police officer confirmed that she was not the perpetrator of the theft, thus clearing her name. Plaintiff's requested relief implies that her police record has not yet been corrected, but it is "entirely speculative" that there is still a record that exists or could be used against her in the future, given that the warrant is quashed.

Even if Plaintiff sufficiently alleged a right or liberty interest, she has not alleged a deprivation of that right by Defendants. Consider *Saunders-El v. Rohde*, 778 F.3d 556 (7th Cir. 2015). In *Saunders-El*, the plaintiff was arrested for a burglary but eventually acquitted by a jury at trial. *Id.* at 558. The plaintiff then sued various police officers based on allegations of evidence fabrication, asserting a due process claim. *Id.* at 558–59. The Seventh Circuit affirmed summary judgment for the defendants because the plaintiff had been released on bond following his arrest and acquitted at trial, meaning he had not been deprived of his rights. *Id.* at 561. The court relied on its previous holding in *Alexander v. McKinney*, 692 F.3d 553, 557 (7th Cir. 2012), in which the plaintiff's due process claim based on fabricated evidence had alleged a deprivation "not from the initial arrest, but from the time spent in confinement *after* arrest." *Saunders-El*, 778 F.3d at 560–61. Courts following *Saunders-El* have likewise found no deprivation of liberty where plaintiffs were "quickly released on bond following their arrests." *Cairel v. Alderden*, 821 F.3d 823, 831 (7th Cir. 2016); *Towne v. Donnelly*, 2021 WL 3022327, at *4 (N.D. Ill. July 16, 2021).

9

Like the allegations of fabricated evidence in *Saunders-El*, Plaintiff alleges that the officer Defendants failed to take proper investigatory steps before seeking a warrant. This alleged misconduct led to her purported deprivation. And like the plaintiffs in *Saunders-El* and its progeny involving individuals who were quickly released on bail and eventually acquitted, Plaintiff was never held in police custody or otherwise physically restrained, and eventually had her name cleared of the suspected crime. Plaintiff cites no cases, and the Court finds no significant factual difference, that justifies this case being treated differently. Accordingly, Plaintiff has not sufficiently alleged a deprivation of her liberty.

Plaintiff's other Fourteenth Amendment claim asserts a violation of her equal protection rights. Defendants argue for dismissal because Plaintiff has not alleged that she is a member of a protected class. Although Plaintiff does not allege how her right to equal protection was violated, she provides more context in her opposition brief. She claims that she reported "identity theft and wrongful police inaction" to the police, but her reports were not handled with the same urgency that she claims others who were similarly situated would have received. [21] at 3. Given Plaintiff's *pro se* status, the Court will consider her allegations made in her brief. *See Swofford v. Mandrell*, 969 F.2d 547, 549 (7th Cir. 2012) ("[T]he court should consider allegations contained in the other court filings of a *pro se* plaintiff."); *Flowers v. Donahoe*, 2012 WL 3292836, at *1 (N.D. Ill. Aug. 10, 2012) (viewing *pro se* complaint "in light of additional allegations set out in [plaintiff's] other court filings"); *Johns v. Gilmore*, 75 F. Supp. 2d 841, 844 n.1 (N.D. Ill. 1999) (addressing arguments made in filings attached to habeas petition but not in petition itself). In doing so and construing her allegations liberally, the Court understands Plaintiff to allege that she received different treatment from the officer Defendants than others who have also made reports of identity theft.

Along with prohibiting state actions that discriminate based on membership in a protected class, the Equal Protection Clause of the Fourteenth Amendment prohibits state action that irrationally targets an individual for discriminatory treatment, a so-called "class of one." *Reget v. City of La Cross*, 595 F.3d 691, 695 (7th Cir. 2010). To bring a "class of one" claim, a plaintiff must allege "(1) that [she] has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment." *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 771 (7th Cir. 2021); *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). At the pleading stage, the plaintiff need not identify and describe similarly situated people in the complaint. *Miller v. City of Monona*, 784 F.3d 1113, 1120 (7th Cir. 2015). However, she "must allege that state actors lacked a rational basis for singling [her] out for intentionally discriminatory treatment." *Id.* at 1121. If a complaint merely "suggest[s] an improper motive" and "reveals a potential rational basis for the actions of local officials," that is "all it takes to defeat a class-of-one claim." *Id.* (cleaned up).

Plaintiff does not allege discrimination based on her membership in a protected class. Rather, she alleges that she was treated differently from others who report identity theft without a rational basis for the disparate treatment. The Seventh Circuit has "repeatedly confirmed that plaintiffs alleging class-of-one equal protection claims do not need to identify specific examples of similarly situated persons in their complaints." *Ind. Land Trust #3082 v. Hammond Redevelopment Comm'n*, 107 F.4th 693, 698 (7th Cir. 2024) (cleaned up); *Miller*, 784 F.3d at 1120. Plaintiff has identified a group of people with whom she is similarly situated, and she alleges that she was irrationally treated differently from them. Although she does not identify any similarly situated person in the Complaint, she is not required to do so at this stage. It follows that her allegations satisfy the first element.

Proceeding to the second element, Plaintiff must also plead that Defendants lacked a rational basis for the different treatment she experienced. The only allegation relating to rational basis is Plaintiff's statement that she was "treated differently than others who report identity theft, without a rational basis for the disparate treatment." [21] at 3. This is merely conclusory. *Catinella*, 881 F.3d at 517. However, the Court may also consider whether the factual allegations convey an improper discriminatory purpose. The Seventh Circuit has allowed a complaint to survive dismissal where it pleaded facts that allowed the district court to conclude that the defendants intentionally treated the plaintiff differently from others similarly situated. In *Geinosky v. City of Chicago*, the plaintiff had received twenty-four parking tickets and alleged that they had been received within fourteen months, had been written by officers within the same unit, were inconsistent with each other, and included some issued after plaintiff had sold his car. 675 F.3d at 745. The Seventh Circuit reversed the district court's dismissal because these factual allegations demonstrated the defendant officers' improper discriminatory purpose and satisfied the pleading requirement. *Id.* at 748.

In Plaintiff's pleadings, she alleges that CPD possessed a report confirming that her name was previously used as an alias, and, as support, she attaches to her Complaint a "victim information notice" form that is filled out to state that she was a victim of identity fraud. [1] at 3, 16. The form states that it is "not an official police report" and "is for information purposes only." *Id.* Although the form is not dated as to when it was filed with CPD, the date of the alleged identity theft is July 2024. *Id.* Even assuming that this form led to an official police report of identity theft in July 2024, that Plaintiff's identity was used by another person, and that the report has gone unaddressed through the present day, the Complaint does not demonstrate an improper motive. There are no factual allegations that the officer Defendants had knowledge of a report or were

12

involved in its creation or investigation, unlike the officers in *Geinosky* whose names were on each bogus parking ticket. *See* 675 F.3d at 745. Defendants' alleged actions are limited to issuing the warrant, which is not adequately connected to the identity theft report to convey an improper motive. Plaintiff does not allege, and the Complaint's attachments do not show, that the perpetrator of the retail theft was the same person who had purportedly used Plaintiff's identity or that the officer Defendants suspected that they were the same person. So there is no factual basis to find that the officer Defendants relied on any improper identity information when pursuing the arrest warrant. While Plaintiff tries to draw a link between her unaddressed report and the arrest warrant, her allegations do not bridge the factual gap to infer that Defendants irrationally ignored her report.

Plaintiff's remaining claim is a common law negligence claim under Illinois law. A district court "may decline to exercise supplemental jurisdiction" over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Ratfield v. U.S. Drug Testing Lab'ys, Inc.*, 140 F.4th 849, 854 (7th Cir. 2025) (citation omitted). "[O]nly in 'unusual cases' may a district court exercise its discretion to assert its supplemental jurisdiction based upon the balance of the factors of 'judicial economy, convenience, fairness and comity.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)). That way, courts "minimize federal judicial intrusion into matters of purely state law." *Id.* (citation omitted).

Having dismissed Plaintiff's federal claims over which it had original jurisdiction, the Court only has supplemental jurisdiction over the remaining state law negligence claim. This is not an unusual case that requires a departure from the usual practice. The Court has not invested

significant resources in the state law claim or engaged in any meaningful review of its merits. Moreover, it is no less convenient or fair for the parties to proceed in state rather than in federal court. Accordingly, the Court declines to exercise supplemental jurisdiction, dismisses the remaining claim, and does not reach Defendants' immunity argument. *See, e.g.*, *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1041 (7th Cir. 2018) (affirming dismissal of state law negligence claims and related third-party contribution claims under 28 U.S.C. § 1367(c) after dismissal of the primary defendant removed diversity).

## Conclusion

For the reasons stated above, Defendants' motion to dismiss [19] is granted. Ordinarily, "a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). Therefore, Plaintiff's Complaint is dismissed without prejudice. The Court grants Plaintiff leave to file an amended complaint if such an amendment is consistent with her obligations under Federal Rule of Civil Procedure 11. If Plaintiff does not file an amended complaint by December 16, 2025, then the dismissal will automatically convert to a dismissal with prejudice.

**SO ORDERED.**

Dated: November 25, 2025

Sunil R. Harjani
United States District Judge